IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

SEP 23 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JENNIFER ARTHUR,

    Plaintiff,

v.                                                    Civil Action No. 2:19cv186

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on Plaintiff Jennifer Arthur's ("Plaintiff's" or "Arthur's") Objections to the United States Magistrate Judge's Report and Recommendation, Doc. 22, and on Plaintiff's and Defendant Commissioner of Social Security's ("Defendant's" or "Commissioner's") cross-Motions for Summary Judgment, Docs. 16, 18. For the reasons stated herein, the Court **OVERRULES** Plaintiff's Objections to the Report and Recommendation, Doc. 22, and **ADOPTS** the Report and Recommendation in full.

### I.     PROCEDURAL HISTORY

Arthur brings this action under 42 U.S.C. § 405(g) to challenge the Commissioner's denial of her claim for disability insurance benefits and supplemental security income under the Social Security Act. Arthur filed applications for disability insurance benefits and supplemental security income on November 24, 2014, alleging that she became disabled on February 9, 2013,[1] due to the following conditions: congestive heart failure; chronic back, hip, and shoulder pain;

---

[1] Arthur previously applied for disability insurance benefits and supplemental security income in September 2011. Report and Recommendation ("Report") at 2 n.1. On February 8, 2013, an Administrative Law Judge ("ALJ") denied Arthur's applications, and on May 30, 2014, the Appeals Council denied Arthur's request for review of the ALJ's decision. Id. Here, Arthur initially listed an alleged disability onset date of November 24, 2010; however, Arthur then amended that date to February 9, 2013, which is the day after the first ALJ's decision. Id.; Administrative Record ("R.") at 71, 308.

1

type 2 diabetes; depression; and sleep apnea. Report at 2. The Commissioner denied Arthur's applications on May 8, 2015, and again on reconsideration. Id. An ALJ heard the matter on June 14, 2017, and Arthur appeared at this administrative hearing represented by counsel. Id. The ALJ then issued an opinion denying Arthur's applications on November 13, 2017. Id. On September 27, 2018, the Appeals Council denied Arthur's request for review of the ALJ's decision. Id.

Arthur filed a Complaint in this Court on April 22, 2019, Doc. 7, and she filed a Motion for Summary Judgment on August 26, 2019, Doc. 16. The Commissioner filed a cross-Motion for Summary Judgment on September 25, 2019, Doc. 18. This matter was referred to a United States Magistrate Judge for a Report and Recommendation on July 24, 2019. Doc. 14.

The Magistrate Judge reviewed the motions and issued the instant Report and Recommendation on June 3, 2020, recommending that the Court (1) grant the Commissioner's Motion for Summary Judgment; (2) deny Arthur's Motion for Summary Judgment; and (3) dismiss the case. Doc. 21. Arthur timely filed her Objections to the Report and Recommendation on June 16, 2020, Doc. 22,[2] and the Commissioner filed his response on June 30, 2020, Doc. 23. Subsequently, Arthur filed a Notice of Supplemental Authority on September 8, 2020, Doc. 24, and the Commissioner filed his response on September 16, 2020, Doc. 25.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition;

---

[2] Arthur requests that the Court allow the parties to present oral arguments, Doc. 22 at 6; however, the Court concludes that oral argument is unnecessary because the facts and legal arguments are adequately presented in the parties' written filings.

receive further evidence; or return the matter to the magistrate judge with instructions." Id. The Court reviews those parts of a Magistrate Judge's recommendation to which a party has not objected for clear error. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005).

In exercising de novo review of the parts of a Magistrate Judge's recommendation to which a party has properly objected, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Johnson, 434 F.3d at 653 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation marks omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (quoting Craig, 76 F.3d at 589) (internal quotation marks omitted) (final alteration in original). Even if "the evidence will permit a conclusion inconsistent with that of the Commissioner," the Court must uphold the ALJ's decision if it is supported by substantial evidence and the ultimate conclusions are legally correct. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964); see also Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

## III. DISCUSSION

The Report and Recommendation describes the relevant facts in detail, and neither party objects to the Report and Recommendation's account of the facts. Accordingly, the Court need not reiterate the factual background, except where relevant to its analysis.

### A. The ALJ's Decision

During the hearing before the ALJ on June 14, 2017, Arthur and a Vocational Expert ("VE") testified. Report at 2-3; see, e.g., R. at 52-59, 90-102. On November 13, 2017, the ALJ issued a written opinion finding that Arthur did not qualify as disabled under the Social Security Act. R. at 10-27.

In determining whether Arthur was disabled, the ALJ applied the applicable five-step process for assessing claims for disability insurance benefits and supplemental security income. See 20 C.F.R. §§ 404.1520(a), 416.920(a). Specifically, the ALJ considered: (1) whether Arthur was engaged in substantial gainful activity; (2) whether Arthur had a severe medically determinable impairment or combination of impairments that significantly limited her physical or mental ability to do work activities; (3) whether Arthur's impairment met the criteria of an impairment listed in the Social Security Administration's ("SSA's") listing of official impairments; (4) whether Arthur had the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and (5) whether Arthur was able to do any other work based on her RFC, age, education, and work experience. See R. at 10-27.

With respect to step one, the ALJ found that Arthur had not engaged in substantial gainful activity since February 9, 2013, her alleged disability onset date. Report at 8; R. at 14. At step two, the ALJ found that Arthur had the following severe impairments: degenerative disc disease and osteoarthritis; carpal tunnel syndrome; asthma; diabetes with neuropathy; macular

4

edema and retinopathy; and congestive heart failure. Report at 8; R. at 14. At step three, the ALJ determined that Arthur did not have an impairment or combination of impairments that medically equaled the severity of a listed impairment in the SSA's list of impairments. Report at 8; R. at 15-16. With respect to step four, the ALJ found that Arthur had the RFC to perform sedentary work, subject to the following:

> [T]he claimant cannot crawl or climb ladders, ropes or scaffolds, but she can climb ramps and stairs, stoop, kneel, and crouch occasionally. The claimant retains the ability to balance frequently. She can finger objects with either hand frequently. The claimant can perform work activities that do not require her to move while at unprotected heights, or operate moving mechanical parts that pose an immediate hazard or danger. The claimant is able to have no more than frequent exposure to dust, odors, fumes, gases or pulmonary irritants, extreme heat, and vibration. The claimant is able to read only larger than normal sized print documents. The claimant can frequently, but not always, push or pull with lower extremities due to edema. The claimant must be allowed to occasionally alternate between sitting and standing positions while at the workstation. The claimant is expected to be off-task up to 5% of the time in an 8-hour workday. The claimant has the ability to perform work activities that allow her to use a cane for walking.

Report at 8-9 (quoting R. at 16). Based upon this assessment of Arthur's RFC, the ALJ found that Arthur could no longer perform any of her past relevant work, which had included work as a counselor and case manager. Id. at 3, 9; R. at 21.

Finally, at step five, considering Arthur's age, education, past relevant work, and the RFC, the ALJ found that Arthur had "acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy." Report at 9 (quoting R. at 21-22). Therefore, the ALJ concluded that a finding of no disability was warranted. Id.; R. at 22-23.

**B. Analysis**

In the Report and Recommendation, the Magistrate Judge recommends that the Commissioner's Motion for Summary Judgment be granted, Arthur's Motion for Summary

5

Judgment be denied, and the case be dismissed. Report at 24. Arthur has objected to the Report and Recommendation, and requests that the Court direct an award of benefits, or remand the case for further development. Doc. 22. Specifically, Arthur raises the following objections to the Magistrate Judge's Report and Recommendation: (1) "[t]he ALJ's step five finding relies upon a reasonable accommodation in direct violation of agency policy," id. at 1; (2) "[t]he Commissioner did not meet [his] burden of proving that Plaintiff's acquired work skills were readily transferrable to a significant range of light work activity and that the [identified] occupations at issue required very little if any vocational adjustment," id. at 3; and (3) "[t]he presiding ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide the case." Id. at 5 (emphasis omitted and capitalization corrected). The Court addresses each of Arthur's objections in turn.

### 1. First Objection

Arthur first objects to the Magistrate Judge's finding that the ALJ did not err in relying on the VE's testimony during the step five analysis. Doc. 22 at 1-3. Specifically, Arthur argues that at the hearing, the ALJ's hypothetical to the VE included a limitation of reading only larger than normal sized print documents, and this limitation impermissibly constitutes a reasonable accommodation under the Americans with Disabilities Act ("ADA"). Id. at 1. In raising this objection, Arthur relies on Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), and Social Security Ruling ("SSR") 00-1c, 2000 WL 38896. Id.

As a preliminary matter, the Court notes that Arthur raised a nearly identical argument in her Motion for Summary Judgment. Compare Doc. 17 at 2, with Doc. 22 at 1-3. "[A] mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487,

497 (E.D. Va. 2015) (citations omitted). Nevertheless, the Court has conducted a <u>de novo</u> review of the issues raised in Arthur's first objection, and, for the reasons set forth below, Arthur's first objection fails.

In her first objection, Arthur argues that "the Commissioner is prohibited from including reasonable accommodations in an RFC when making a Step Five determination," and Arthur contends that the ALJ did this when he included the limitation of being able to read only larger than normal size font in his hypothetical to the VE. Doc. 22 at 1. In the Report and Recommendation, the Magistrate Judge stated that "Plaintiff is correct that the ALJ is not entitled to consider the possibility of accommodation by employers when assessing the availability of jobs in the national economy that a claimant can perform;" however, the Magistrate Judge concluded that the ALJ had not done so in this case. Report at 12.

The Magistrate Judge explained that "[i]n this case, the ALJ, <u>at the behest of Arthur's counsel</u>, instructed the VE, in opining on the availability of jobs Arthur could perform, to consider the limitation of being able to read only larger than normal-sized print." <u>Id.</u> (emphasis in original) (citing R. at 16, 94, 97-98). Notably, the ALJ did not ask the VE to assume that Arthur would receive a reasonable accommodation under the ADA, and the VE did not mistakenly believe that the hypothetical required this assumption. <u>Id.</u> Instead, when identifying the jobs that the VE "believed a hypothetical person with Arthur's limitations could perform, the VE testified that such jobs already accounted for the reading size limitation – that is, the hypothetical person could perform the job <u>without</u> any reasonable accommodation." <u>Id.</u> (emphasis in original); <u>see</u> R. at 99-100.

Furthermore, although the need for larger than normal-sized print might be considered a reasonable accommodation under the ADA, this "does not alter the [Court's] analysis because

7

the VE's testimony was not contingent on potential employers providing any reasonable accommodations." Report at 12-13. To the contrary, in discussing the limitation of larger font, the ALJ, VE, and Arthur's attorney had the following exchange:

> [ALJ:] Well, just to make sure I understand, fine visual acuity would not preclude reading, does that preclude reading as you understand it?
>
> [VE:] I consider fine visual acuity reading. If you -- if a person -- when you say no -- no is pretty absolute, when you say no fine visual acuity, I interpret that as -- I take that as no reading. If you say reading, you can say limited or you can [say] some other word, but if you say no, that cuts out reading you can say large print, you can say you know, like computer work, you can blow it up, there's things that if you can read with a large print or if you can -- or whatever, but the –
>
> ALJ: And, Counsel, what I'm going to do is I'm going to retain that limitation as stated, since it's what you had asked for, but for my purposes, because we have testimony that she is able to read, and does read, in fact reads to kids and I realize it's a little bit larger --
>
> ATTY: Yes.
>
> ALJ: -- books, usually with kids reading, we certainly don't have finding of blindness and it is not my intent to say that she cannot read.
>
> ATTY: No, nor is it my intent to submit that. My intent is to submit that her reading is at large print.
>
> ALJ: Okay. <u>Then what if I said limited to jobs that have the opportunity to read at large -- larger than normal print, which is 12 [point] Font usually</u>.
>
> ATTY: And if that's, yeah, I'm fine with that.
>
> ALJ: Okay. So, able to read only documents larger print, which is 12 [point] Font.

Report at 4-5 (emphasis added) (quoting R. at 97-98). As illustrated by this exchange, the ALJ did not ask the VE to assume that a reasonable accommodation would be required to perform the jobs identified by the VE, and instead, the ALJ requested that the VE identify

8

jobs that already accounted for the font size limitation. Moreover, contrary to Arthur's assertion that remand is required if any aspect of the ALJ's hypothetical to the VE includes limitations that also may be considered a reasonable accommodation, in crafting a hypothetical to the VE, the ALJ is not prevented from including limitations that, in the abstract, may also be considered a reasonable accommodation under the ADA. See, e.g., Revere v. Berryhill, No. 3:17cv774, 2019 WL 99303, at *6 (E.D. Va. Jan. 3, 2019); Collins v. Berryhill, No. 3:17cv633, 2018 WL 4232888, at *8 (E.D. Va. Aug. 20, 2018), report and recommendation adopted by 2018 WL 4224854 (E.D. Va. Sept. 5, 2018); Williams v. Colvin, No. 6:13-2907-TMC, 2015 WL 628504, at *6, *13 (D.S.C. Feb. 12, 2015).

Therefore, the Magistrate Judge did not err in finding that during the step five analysis, the ALJ properly relied on the VE's testimony regarding the limitation of reading only larger than normal size font. Accordingly, the Court **OVERRULES** Arthur's first objection to the Magistrate Judge's Report and Recommendation.

2. **Second Objection**

Next, Arthur argues that the Magistrate Judge erred by finding that substantial evidence supported the ALJ's conclusion that Arthur could perform the duties of an information clerk and an appointment clerk. Doc. 22 at 3-4. Specifically, Arthur contends that the "[t]he Commissioner did not meet [his] burden of proving that Plaintiff's acquired work skills were readily transferrable to a significant range of light work activity and that the three[3] occupations

---

[3] The Magistrate Judge concluded that one of the three jobs identified by the VE conflicted with the RFC crafted by the ALJ. Report at 14, 16. Specifically, the Magistrate Judge concluded that the telephone clerk position conflicted with the ALJ's RFC determination because the position requires "constant fingering." Id. at 16 (emphasis in original). The Magistrate Judge concluded that the other two jobs identified by the VE – information clerk and appointment clerk – did not conflict with the ALJ's RFC determination, and that substantial evidence supported the ALJ's conclusion that Arthur could perform these jobs. Id. at 16-18. Having reviewed the record, and finding no error, the Court adopts the Magistrate Judge's findings regarding this issue.

9

at issue required very little if any vocational adjustment." Id. at 3 (emphasis omitted and capitalization corrected).

As a preliminary matter, the Court again notes that Arthur's objection restates, nearly verbatim, one of Arthur's arguments in her Motion for Summary Judgment. Compare Doc. 17 at 3-8, with Doc. 22 at 3-4. The reiteration of prior arguments raised in summary judgment filings does not constitute an objection for purposes of this Court's review. See Nichols, 100 F. Supp. 3d at 497. Nevertheless, the Court has conducted a de novo review of the issues raised in Arthur's second objection, and for the reasons set forth below, the Court concludes that this objection fails.

In Arthur's second objection, she argues that the Commissioner did not meet his burden in demonstrating that Arthur could perform jobs existing in significant numbers in the national economy because (i) only two jobs were identified that comported with the ALJ's RFC determination, and (ii) the ALJ failed to demonstrate that Arthur's past work skills were readily transferable to the two jobs identified. Doc. 22 at 3-4. However, as explained below, substantial evidence supports the ALJ's finding that Arthur could perform the duties of the two jobs identified (information clerk and appointment clerk) and that these jobs exist in significant number in the national economy. See Report at 14-23.

First, contrary to Arthur's argument that the identification of "two occupations is not a significant range," Doc. 22 at 3, as set forth in the Report and Recommendation, "the Commissioner need only establish that 'there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications.'" Report at 16 (emphasis added in

10

Report) (quoting 20 C.F.R. §§ 404.1566(b); 416.966(b)). The Commissioner can rely on VE testimony to meet this burden. Id. at 17-18; see 20 C.F.R. §§ 404.1566(e); 416.966(e).

Further, with regard to the job requirements of the two jobs identified by the VE, "to the extent that frequent near acuity conflicts, or appears to conflict, with the VE's testimony that Arthur could perform the duties of information clerk and appointment clerk in light of the ALJ's limitation of being able to read only larger than normal-sized text, the ALJ adequately resolved that conflict during the hearing." Report at 17. Specifically, at the hearing, after an exchange with the VE and Arthur's attorney, the ALJ expressly limited Arthur to "jobs that have the opportunity to read at . . . larger than normal print." R. at 98. Thus, "[t]he ALJ ensured the VE understood this modified limitation, and only after that did the VE identify the [applicable] jobs," and "the VE explicitly referred to the reading size limitation when discussing those jobs." Report at 17; R. at 98-100.

Additionally, in the Report and Recommendation, the Magistrate Judge stated that "[a]lthough Plaintiff is correct that [pursuant to the Dictionary of Occupational Titles ("DOT"), the two identified] jobs require frequent near acuity, see DOT 237.367-022, 1991 WL 672188 (information clerk); DOT 237.367-010, 1991 WL 672185 (appointment clerk), the ALJ did not ultimately limit Arthur to jobs with no near/fine visual acuity." Report at 16-17. Instead, as discussed above, pursuant to the ALJ's exchange with the VE and Arthur's counsel, the ALJ "expressly altered [the original limitation of no fine visual acuity] to the ability to read only larger than normal-sized print." Report at 17; R. at 97-98. Based on this, the VE then identified the two jobs that exist in substantial number in the national economy. Report at 16-18; R. at 100. As such, for the reasons discussed above, substantial evidence supports the ALJ's conclusion

11

that Arthur could perform the identified jobs and that these jobs exist in significant numbers in the national economy.

Second, with respect to Arthur's argument regarding the ALJ's failure to demonstrate that her past work skills were readily transferable to the two jobs identified, as explained below, "substantial evidence supports the ALJ's transferability analysis and his conclusion that Plaintiff could perform the identified jobs of information clerk and appointment clerk with little, if any, vocational adjustment." Report at 22. Specifically, "[i]n evaluating the skill level of [past relevant work] . . . , work activities are the determining factors," and "[t]he claimant is in the best position to describe what he or she did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc. Neither an occupational title by itself nor a skeleton description is sufficient." Id. (emphasis added in Report) (quoting SSR 82-41, 1982 WL 31389, at *3-4). In determining the transferability of a claimant's past work skills, the Commissioner's burden can be met by relying on VE testimony. Id. at 18-20; SSR 82-41, 1982 WL 31389, at *4.

Here, the VE testified that "the information Arthur provided was sufficient for him to classify her past work, identify her acquired work skills, and opine on the transferability of skills as the work was actually performed." Report at 22; R. at 69, 99-100. The VE testified that Arthur's prior jobs (counselor and case manager) were considered "sedentary, skilled, [specific vocational preparation ("SVP") code] 7," but, as performed, the VE defined Arthur's prior jobs as light due to Arthur's fieldwork. R. at 91-92. The VE identified the following transferrable skills: counseling skills, communication skills, some problem resolution skills, basic computer skills, office skills and procedures, report writing, and record keeping. Report at 22; R. at 100. The ALJ then specifically asked the VE to identify any semiskilled or skilled jobs in the national

economy that "Arthur might be able to hypothetically perform in which her actual past works skills would be sufficient to permit the new jobs with no more than very little, if any adjustment in terms of tools used, work processes, work settings or industry standards." R. at 99; Report at 22-23. In response to this question, "the VE identified information clerk (sedentary, semiskilled, SVP 4) and appointment clerk (sedentary, semiskilled, SVP 3)." Report at 23; R. at 100.

Thus, in the ALJ's written opinion, the ALJ properly relied on the VE's testimony in determining the transferability of Arthur's work skills and in reaching the conclusion that Plaintiff could perform the identified jobs of information clerk and appointment clerk with little, if any, vocational adjustment. See Report at 23. Further, in reaching this conclusion, "the ALJ complied with all pertinent relevant regulations and agency rulings." Id.

Therefore, the Magistrate Judge did not err in finding that substantial evidence supports the ALJ's conclusion that Arthur could perform the duties of an information clerk and an appointment clerk. Accordingly, the Court **OVERRULES** Arthur's second objection to the Magistrate Judge's Report and Recommendation.

### 3. Third Objection

Finally, Arthur argues that the Magistrate Judge erred by finding that she forfeited her Appointments Clause challenge because she did not raise this argument during the administrative proceedings. Doc. 22 at 5-6.

Relying on the United States Supreme Court's decision in Lucia v. SEC, 138 S. Ct. 2044 (2018), Arthur contends that ALJs are "inferior officers" subject to the Appointments Clause of the United States Constitution, and therefore, they must be appointed by the Commissioner. Doc. 17 at 8; see Doc. 22 at 5-6. Arthur argues that because the ALJ in this case allegedly did

13

not have such an appointment when the ALJ rejected Plaintiff's disability claim, the ALJ "was not lawfully permitted to hear or decide this case under the Constitution's Appointments Clause," and this case "should be remanded for a new hearing before an ALJ who has been lawfully appointed." Doc. 17 at 12.

In Arthur's third objection, in addition to relying on Lucia, she also relies on Cirko v. Commissioner of Social Security, 948 F.3d 148 (3d Cir. 2020), and Sims v. Apfel, 530 U.S. 103 (2000). Doc. 22 at 5-6. After filing her objections, Arthur filed a Notice of Supplemental Authority, providing notice of a recent opinion from the United States Court of Appeals for the Sixth Circuit, Ramsey v. Commissioner of Social Security, --- F.3d ---, Nos. 19-1579/1581/1586/1889/1977/3886, 2020 WL 5200979 (6th Cir. Sept. 1, 2020). Doc. 24. Arthur argues that this case "holds in exact conformity with the arguments Plaintiff has made in this matter with respect to the Appointments Clause [i]ssue in her Brief and Objections to the Report and Recommendation." Id.

As an initial matter, the Court notes that the substantive argument set forth in Arthur's third objection was previously presented at the summary judgment stage and considered by the Magistrate Judge. Compare Doc. 17 at 8-12, with Doc. 22 at 5-6. Specifically, in the Report and Recommendation, the Magistrate Judge discusses Plaintiff's view of the relevant case law and identifies a number of cases from this Court that have reached the same conclusion as the instant Report and Recommendation – namely, that failure to raise an Appointments Clause challenge in the administrative proceedings operates as a waiver, forfeiting review in federal court. Report at 23-24 (citing cases). Therefore, it appears that Arthur's objection simply restates arguments that she made in her Motion for Summary Judgment, and such reiteration of prior arguments

does not constitute an objection for purposes of this Court's review. See Nichols, 100 F. Supp. 3d at 497.

Nevertheless, the Court has conducted a de novo review of the issues raised in Arthur's third objection, and the Court concludes that Arthur has failed to provide controlling authority on this issue that would warrant sustaining her objection. Further, the Court notes that although there are several cases pending before the United States Court of Appeals for the Fourth Circuit that raise the same Appointments Clause challenge, as of the date of entry of this Order, the Fourth Circuit has not decided this issue. See, e.g., Probst v. Saul, No. 19-1529 (oral argument held Sept. 10, 2020). Absent contrary authority from the Fourth Circuit, the Court finds Arthur's arguments regarding her Appointments Clause challenge to be unavailing. Accordingly, the Court **OVERRULES** Arthur's third objection to the Magistrate Judge's Report and Recommendation.

## IV. CONCLUSION

For the reasons stated herein, the Court **OVERRULES** Plaintiff's Objections to the Report and Recommendation, Doc. 22, and **ADOPTS** the Report and Recommendation of the United States Magistrate Judge in full. The Court **GRANTS** Defendant's Motion for Summary Judgment, Doc. 18, and **DENIES** Plaintiff's Motion for Summary Judgment, Doc. 16. The action is **DISMISSED**.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 23, 2020